IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT W STRAUSS,                    )
                                     )
            Plaintiff,               )        Civil No. 08-931-AA
                                     )        OPINION AND ORDER
      vs.                            )
                                     )
COMMISSIONER OF SOCIAL SECURITY,     )
                                     )
            Defendant.               )
_____    )

David B. Lowry
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223-5502
      Attorney for plaintiff

Kent Robinson
Acting United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Kathryn A. Miller
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7074
      Attorneys for defendant

1    - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Robert Strauss brings this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the Commissioner's decision. The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Because the Administrative Law Judge (ALJ) failed to comply with an express directive in the Appeals Council's remand order, I find his decision is not supported by substantial evidence and therefore remand for payment of benefits.

### PROCEDURAL BACKGROUND

Plaintiff protectively filed his application for DIB benefits on December 23, 2003. Tr. 53-55. He alleged disability beginning October 31, 2001, due to left knee chronic neuropathic pain, hypertension, and depression. Tr. 81. Plaintiff's application for disability benefits was denied initially and upon reconsideration, and plaintiff requested a hearing before an ALJ on April 26, 2004. Tr. 41. On January 11, 2006, ALJ Timothy Terrill conducted a hearing ("the 2006 hearing"). Tr. 409-49. At the 2006 hearing, ALJ heard testimony from plaintiff; plaintiff's wife; plaintiff's son and daughter; and a vocational expert. Id. On February 23, 2006, ALJ Terrill issued a decision finding plaintiff not disabled

("the 2006 decision").  Tr. 12-25.  The Appeals Council denied

plaintiff's request for review on September 29, 2006 and

plaintiff then filed a complaint in this Court.  Tr. 3-5.

On July 29, 2007, this Court reversed the ALJ's decision

and remanded the case for further administrative proceedings

pursuant to a stipulation of the parties.  Tr. 524-25.  The

order stated:

> The ALJ will conduct a new hearing, further develop the
> record and issue a new decision;
>
> The ALJ will evaluate and further develop the medical
> evidence or record;
>
> The ALJ will consider Plaintiff's obesity pursuant to SSR
> 96-7p;
>
> The ALJ will further consider Plaintiff's credibility
> pursuant to SSR 02-1p;
>
> The ALJ will discuss and evaluate the lay witness
> testimony from Plaintiff's wife, June Strauss, son,
> Joshua Strauss, and daughter, Nicole Strauss;
>
> The ALJ will re-evaluate Plaintiff's RFC pursuant to SSR
> 96-8p;
>
> The ALJ will re-evaluate step four and if necessary step
> five of the sequential evaluation process with the
> assistance of a vocational expert, as necessary.

Id.  On November 20, 2007, consistent with this Court's remand

order, the Appeals Council remanded this case for further

administrative proceedings, ordering the ALJ to:

> Update the medical record with existing evidence from the
> treating sources, to include medical source statements
> (20 C.F.R. 404.1512);
>
> Consider the claimant's obesity pursuant to Social

Security Ruling 02-1p;

Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 C.F.R. 404.1529) and Social Security Ruling 96-7p;

Evaluate the lay witness testimony by the claimant's spouse and two children pursuant to Social Security Ruling 06-03p;

Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence in the record in support of the assessed limitations (20 C.F.R. 404.1545 and Social Security Ruling 96-8p);

Re-evaluate step four of the sequential evaluation and, if necessary, with the assistance of a vocational expert;

If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of assessed limitations on the claimant's occupational base (Social Security Ruling 83-14), and to determine whether the claimant has acquired any skills that are transferable to other occupations under the general guidelines in Social Security Ruling 82-41. The hypothetical question should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 C.F.R. 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupation evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 526-29. On April 24, 2008, ALJ Terrill conducted a supplemental hearing ("the 2008 hearing"). Tr. 693-715. Plaintiff and a vocational expert testified at this hearing. On May 29, 2008, ALJ Terrill issued a second decision finding

plaintiff not disabled ("the 2008 decision").  Tr. 450-65.

Plaintiff subsequently filed a complaint in this Court.

### STATEMENT OF THE FACTS

Plaintiff was 44 years old on the alleged onset date of disability, and completed one year of college.  Tr. 86.  He worked as a recruiting manager, recruiter, sales representative, sales manager, district sales manager, technical training instructor, and president of a company, all in the computer services industry.  Tr. 445.  He also worked as a branch manager of an employment agency.  Id.  Plaintiff alleges disability beginning October 31, 2001.  Pl.'s Br. 4, Tr. 81.  Plaintiff was employed during the alleged time of disability.  Tr. 547.  He reported earnings of $6,737.21 in 2003, $1,418.54 in 2004, $5,338.20 in 2005, and $10,925.63 in 2006.  Id.  He had no earnings in 2002.  Id.

I. Chronic Leg Pain

Plaintiff's primary complaint is extreme, fire-like pain in his left leg.  Tr. 419, 709.  In 1983, plaintiff sustained an injury to his anterior crutiate ligament (ACL) while practicing judo.  Tr. 413.  Plaintiff had a total of seven total surgeries, none of which successfully repaired the damage.  Tr. 414.  After the most recent surgery, in October 1997, plaintiff experienced excruciating and persistent leg pain.  Id.

Plaintiff was treated at Pain Management Consultants from
September 20, 2000, through July 16, 2002.  Tr. 153-64.  Id.
From October 8, 2002, through December 11, 2003, plaintiff was
treated at Advanced Pain Management Center, with appointments
on a monthly basis for medication and pain management.  Tr.
166-207.  In September 2002, plaintiff was diagnosed with
reflex sympathetic dystrophy.  Tr. 205-07.  Plaintiff has been
prescribed a variety of pain medications, including OxyContin,
Methadone, and Vicodin.  Tr. 159, 192, 588.  On January 24,
2008, plaintiff was taking 11 tablets of Methadone daily for
pain.  Tr. 588.

Plaintiff was also treated by Dr. Gregg Coodley from 1999
through 2008.  Tr. 212-314, 588-692.  On September 25, 2002,
Dr. Coodley noted that plaintiff's knee MRI showed "chronic
damage," and recommended referral to an orthopedist.  Tr. 274-
75.  In a 2004 "Ability To Do Work-Related Activities"
questionnaire, Dr. Coodley remarked that plaintiff's "level of
pain is such that it limits his ability for any activity
involving the left lower extremity."  Tr. 218.  Dr. Coodley
indicated it would be reasonable to expect plaintiff would
"experience substantial difficulty with stamina, pain or
fatigue" if working full-time and noted plaintiff "would need
to work at a reduced pace," even if his job involved light or
sedentary levels of activity.  Id.  Dr. Coodley concluded

plaintiff could lift or carry 10 pounds frequently, 20 pounds
occasionally, stand/walk less then 2 hours of an 8 hour
workday, and would have to change position/posture more than
once every two hours.  Id.

On March 1, 2004, a non-examining physician completed a
Residual Functional Capacity Assessment form.  Tr. 330-35.  He
noted a primary diagnosis of "reflux sympathetic dystrophy LLE"
and a secondary diagnosis of "left knee chondromalacia patellae
grade four."  Tr. 332.  The non-examining physician concluded
plaintiff could lift or carry 10 pounds frequently, and 20
pounds occasionally; stand/walk at least 2 hours of an 8 hour
workday; and sit about 6 hours of an 8 hour workday.  Tr. 334.

II. Other Complaints

In the 2004 questionnaire, in addition to plaintiff's
leg/knee pain, Dr. Coodley noted the following diagnoses: (1)
possible dependency on opioid medication; (2) hypertension; (3)
depression, and (4) recent hospitalization for drug overdose
with suicidal ideation.  Tr. 213.  Dr. Coodley wrote that pain
medication "may cause some mental incapacitation of poor
concentration, memory problems . . . [and] irritability."  Tr.
218.  Treatment records and progress notes from November 30,
2005 through January 24, 2008, submitted after remand, indicate
ongoing treatment with Dr. Coodley and Dr. Myron Lezak for (1)
diarrhea/incontinence/abdominal pain related to irritable bowel

syndrome/colitis; (2) diabetes; (3) hypertension; (4) insomnia; and (5) depression. Tr. 588-692.

Following a two week period of chronic diarrhea in November 2005, plaintiff sought treatment with Dr. Lezak. Tr. 644. While plaintiff was initially diagnosed with Crohn's disease or chronic ulcerative colitis, when the diarrhea persisted despite treatment, Dr. Lezak changed the diagnosis to Bowel Dysmotility and Irritable Bowel Syndrome with some indication of Inflammatory Bowel Disease. Tr. 631. By September 26, 2006, plaintiff reported his diarrhea was "less," tr. 620, and by January 9, 2007, it was "resolved completely," tr. 612.

On February 24, 2004, a non-examining psychologist completed a Psychiatric Review Technique Form. Tr. 316-29. The examiner concluded plaintiff suffered from an affective order with depression and anxiety, assessing "mild" limitations in social functioning, concentration, persistence, and pace. Tr. 319, 321, 326. The psychologist remarked, "[m]ost limitation is due to physical problems." Tr. 328.

### STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more

than a mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229
(1938)).  The court must weigh "both the evidence that supports
and detracts from the Secretary's conclusion."  Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to
establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486
(9th Cir. 1986).  To meet this burden, plaintiff must
demonstrate an "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected . . . to last for a
continuous period of not less than 12 months. . . ."  42 U.S.C.
§ 423(d)(1)(A).

The Secretary has established a five-step sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520,
416.920.  First the Secretary determines whether a claimant is
engaged in "substantial gainful activity."  If so, the claimant
is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R. §§
404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant
has a "medically severe impairment or combination of

impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R.
§§ 404.1520(c), 416.920(c).  If not, the claimant is not
disabled.

In step three the Secretary determines whether the
impairment meets or equals "one of a number of listed
impairments that the Secretary acknowledges are so severe as to
preclude substantial gainful activity." <u>Id</u>.; <u>see</u> 20 C.F.R. §§
404.1520(d), 416.920(d).  If so, the claimant is conclusively
presumed disabled; if not, the Secretary proceeds to step four.
<u>Yuckert</u>, 482 U.S. at 141.

In step four the Secretary determines whether the
claimant can still perform "past relevant work." 20 C.F.R. §§
404.1520(e), 416.920(e).  If the claimant can work, he is not
disabled.  If he cannot perform past relevant work, the burden
shifts to the Secretary.  In step five, the Secretary must
establish that the claimant can perform other work.  <u>Yuckert</u>,
482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e)-(g),
416.920(e)-(g).  If the Secretary meets this burden and proves
that the claimant is able to perform other work which exists in
the national economy, he is not disabled.  20 C.F.R. §§
404.1566, 416.966.

### DISCUSSION

### I. The ALJ's Findings

At step one, the ALJ determined that plaintiff had

engaged in substantial gainful activity from November 2006,
through January 2008.  Tr. 455-56.  This finding is not in
dispute.  Therefore, the period of time at issue in this case
is approximately five years, from October 31, 2001, to November
2006.

At step two, the ALJ found the following severe
impairments: reflex-sympathetic dystrophy syndrome in the left
leg, and osteoporosis.  Id.  The ALJ found plaintiff suffered
from colitis and depression, but categorized those impairments
as non-severe.  Id.  He found the colitis non-severe because
"it did not last for a continuous period of 12 months."  Id.
He found the depression non-severe because it "has been under
adequate control with treatment and/or has not imposed severely
limiting psychological symptoms."  Id.  The ALJ reached this
conclusion based on the 2004 evaluation completed by non-
examining psychologist.  Id.  The ALJ discredited Dr. Coodley's
responses to the questionnaire indicating plaintiff's ability
to work would be affected by his depression, anxiety, and
opioid dependency because (1) "he is not a psychologist or
psychiatrist;" (2) his responses on the questionnaire were
"inconsistent" with his progress notes; and (3) he had
previously reported plaintiff was "doing well" with regard to
his depression.  Tr. 457.  The ALJ found plaintiff's obesity
did not satisfy the criteria of a severe physical impairment,

and rejected allegations of memory problems because there was
"no objective evidence" in the record to support the
complaints.  Id.  These findings are in dispute.

At step three, the ALJ found that plaintiff did not
suffer from an impairment or combination of impairments that
meet or medically equal one of the listed impairments in the
regulations.  Id.  This finding is not in dispute.

At step four, the ALJ found that plaintiff's limitations
left him with the residual functional capacity (RFC) "to
perform a limited range of light work."  Id.  According to the
ALJ's assessment, plaintiff is able to lift 20 pounds
occasionally and 10 pounds frequently; stand/walk for 15
minutes at a time for a total of 2 hours out of an 8 hour
workday; sit for 30 minutes at a time with no overall
limitations; and occasionally climb, balance, stoop, kneel,
crawl, and crouch.  Tr. 458.  This finding is in dispute.

In adopting this RFC assessment, the ALJ determined
plaintiff, plaintiff's wife, plaintiff's children, and Dr.
Coodley were not credible regarding their descriptions of
plaintiff's functional limitations.  Tr. 453, 459-60.  The ALJ
based these credibility findings on his conclusion that
evidence regarding plaintiff's activities of daily living
conflicted with the testimony of plaintiff, his family, and Dr.
Coodley.  Id.  The ALJ further discredited plaintiff's family

members' testimony because of their lack of medical expertise,
and because their relationship with plaintiff could diminish
their motivation to offer an objective assessment.  Tr. 459-60.
The ALJ gave "no weight" to Dr. Coodley's assessment of mental
limitations regarding work activities, concluding it was
"simply not sustained" by the evidence.  Tr. 463.

     At step five, the ALJ found plaintiff was capable of
performing past work as a branch manager, computer sales, sales
manager, chief executive officer, and recruiter.  Tr. 464.
This finding is in dispute.

II. Plaintiff's Allegations of Error

     Plaintiff alleges the ALJ erred by (1) failing to update
the medical record and obtain medical source statements as
required by the Appeals Council remand order; (2) finding
plaintiff's colitis with diarrhea and depression to be "non-
severe" impairments with no limitations on his work abilities;
(3) improperly rejecting lay witness testimony; (4) failing to
follow Social Security Rulings in formulating plaintiff's RFC;
(5) determining plaintiff could perform past work and other
work when that finding was unsupported by the evidence; and (6)
relying on conclusory statements by vocational experts
regarding numbers of jobs in the economy.  Because I find
plaintiff's first allegation of error is sufficient to merit
reversal in this case, I do not consider plaintiff's remaining

13   - OPINION AND ORDER

arguments.

In its remand order, this Court directed the ALJ to
"evaluate and further develop the medical evidence or record."
The Appeals Council, issuing specific remand instructions in
response to this Court's order, instructed the ALJ to "[u]pdate
the medical record with existing evidence from the treating
sources, to include medical source statements" (emphasis
added).  Plaintiff argues that the ALJ erred in failing to
obtain new medical source opinions as required by the Appeals
Council's remand order, despite the absence of any such express
instruction in this Court's order.  Defendant concedes that the
ALJ did not obtain new medical source opinions, but contends
that because this Court lacks jurisdiction to review the
Appeals Council's remand order, only compliance with this
Court's remand order (which does not require such statements)
is at issue.  In the alternative, defendant argues failure to
comply with the Appeal's Council directive was not error
because the ALJ followed the "spirit" of the remand order.  I
agree with plaintiff that the ALJ erred in failing to fully
comply with the Appeals Council's order.

Defendant argues that this Court lacks jurisdiction to
review the ALJ's compliance or non-compliance with the Appeals
Council's remand order, relying on cases in other circuits
holding that remand orders themselves are not subject to review

by federal courts.  Accord Culbertson v. Shalala, 30 F.3d 934,
937 n.3 (8th Cir. 1994); Duda v. Secretary of Health & Human
Servs., 834 F.2d 554, 555 (6th Cir. 1987) (per curiam).
However, plaintiff does not seek a review of the remand order
itself, but rather the ALJ's compliance or non-compliance with
the order.  The jurisdictional limit on review of remand orders
exists to allow the administrative proceeding to reach finality
before it is subject to judicial review.  See Port of Boston
Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400
U.S. 62, 71 (1970) (under Administrative Procedure Act, a
relevant consideration in determining finality is whether "the
process of administrative decisionmaking has reached a stage
where judicial review will not disrupt the orderly process of
adjudication").  Lack of finality is not an issue in this case.
The ALJ's decision has become the final opinion of the
Commissioner.  It is therefore subject to review by this court
for compliance with federal law.

    Federal law clearly requires the ALJ to comply with the
orders of the Appeals Council.  Federal regulations state that:
"The administrative law judge shall take any action that is
ordered by the Appeals Council and may take any additional
action that is not inconsistent with the Appeals Council remand

order." 20 C.F.R. § 404.977(b) (emphasis added).[1] Other
courts have recognized that when specific instructions are
provided in a remand order, whether that order is issued by the
Appeals Council or the federal court, the ALJ must comply.
See, e.g., Sandiford v. Astrue, 2009 WL 1773499, at *7 (M.D.
Fla. June 23, 2009); Warren-Ward v. Astrue, 2008 WL 2397390, at
*3 (M.D. Ala. June 10, 2008); see also Thompson v. Barnhart,
2006 WL 709795, at *12 (E.D. Pa. March 15, 2006) (ALJ committed
reversible legal error "by not following the regulations of the
Social Security Administration itself which require adherence
to the remand orders of the Appeals Council."). I find no
basis in the law for concluding that an ALJ's duty to follow
the direction of the Appeals Council on remand is obviated by
the existence of a district court's remand order, particularly
where the Appeals Council order tracks and elaborates on the
court order, as in this case.

        In Beckman v. Apfel, this Court addressed an ALJ's
failure to obtain medical source statements as directed by the

---

[1] Defendant accuses plaintiff of "selectively" citing the
federal regulations by quoting only the first part of the
regulation, apparently implying that an ALJ may either take
action as mandated by the Appeals Council or choose to take other
action that is "not inconsistent" with the Council's order. This
is not what the plain language of the regulation requires. While
an ALJ is clearly free to take additional action consistent with
the Council's order if he chooses, this in no way diminishes the
regulation's clear command that the ALJ "shall" take any action
directed by the Appeals Council.

district court on remand.  1999 WL 1087019, at *5 (D.Or. Aug.
16, 1999).  While the ALJ did obtain medical source statements
from the plaintiff's treating physician and from one examining
physician, he failed to obtain medical source statements from
two of the physicians in the case.  Id. at *6.  The Court
concluded that, "While there were several specific medical
source statements before [the] ALJ [], his duty (as stated
explicitly by [the Court] in this case) was to request all
acceptable medical sources to provide a statement about what a
plaintiff can still do despite the plaintiff's impairment."
Id.  On that basis, and because the Court's explicit
instruction had been issued "almost three years" earlier, the
Court declared the appropriate remedy was to remand for an
award of benefits.  Id.

        Defendant argues that its failure to comply with the
Appeals Council's directives is not error because the ALJ's
opinion is "consistent with the spirit" of the Council's remand
order.  I am not persuaded by this argument for two reasons.
First, defendant points to no support in the law for the
assertion that following the "spirit" of an order excuses
failure to comply with specific directives.  Second, the record
in this case suggests that the ALJ did not comply with the
spirit of either the Council's or this Court's remand order.
For example, in his decision, the ALJ concluded that "[c]olitis

did not last for a continuous period of 12 months" and so was
non-severe.  Tr. 456.  The ALJ apparently based this conclusion
on his impression that plaintiff "had symptoms . . . in
November 2005" but that there were "no additional reports in
this regard."  Tr. 456.  This final statement is wrong.
Plaintiff submitted over 100 pages of new medical records on
remand.  Tr. 588-692.  Nearly one-third of these pages refer to
plaintiff's diarrhea and other gastrointestinal symptoms
between November 2005, and January 2007; in many cases,
discussion of symptoms, tests, diagnoses, and treatment is
extensive.  Tr. 612-647.  The ALJ's statement that there were
"no additional reports in this regard" suggests that the ALJ
not only failed to obtain medical source statements, but failed
to review or consider the new medical reports, in direct
contravention of both this Court's and Appeals Council's remand
orders.  The entire paragraph evaluating plaintiff's claims
regarding symptoms from colitis appears to be duplicated from
the 2006 decision denying benefits.

    I note further that failure to obtain medical source
statements or, apparently, to consider new medical evidence
submitted by plaintiff is not the only way in which the ALJ
failed to comply with the remand orders.  This Court ordered
the ALJ to "further consider Plaintiff's credibility pursuant
to SSR 02-1p."  The Appeals Council's instruction to "further

evaluate the claimant's subjective complaints and provide
rationale in accordance with the disability regulations
pertaining to evaluation of symptoms (20 C.F.R. 404.1529) and
Social Security Ruling 96-7p" echoes and expands upon this
requirement.  A thorough review of the 2008 decision shows
little change from the 2006 decision sections devoted to
credibility analysis.  The only additional "consideration" of
plaintiff's credibility comes in the form of brief paragraphs
stating that (1) plaintiff now has full custody of his two
children; (2) at the 2008 hearing, plaintiff expressed "similar
complaints" as he had at the 2006 hearing; (3) plaintiff now
sometimes uses a cane to help with mobility, though rarely at
work because he finds it "embarrassing"; and (4) plaintiff has
gained 40 pounds, but the fact there is "no evidence to suggest
he has increased his exercise or improved his diet" suggests
claimant "does not have a sincere interest" in achieving
medical and/or functional improvement.  Tr. 459-61.  Not a
single line of the 2006 credibility analysis appears to have
been altered or removed, suggesting the ALJ's "reconsideration"
of plaintiff's credibility was cursory at best.

The combination of failure to obtain medical source
statements, consider updated medical evidence provided by
plaintiff, seek any additional medical evidence or otherwise
develop the record, or change any of the 2006 credibility

analysis suggests that the outcome of plaintiff's hearing was predetermined. The Ninth Circuit has cited with approval the adoption of rules designed to "improve the performance of the ALJs by discouraging them from reach[ing] a conclusion first, and then attempt[ing] to justify it by ignoring competent evidence in the record that suggests an opposite result." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1398 (9th Cir. 1988) (adopting a rule crediting subjective pain testimony as true where the ALJ fails to provide specific, sufficient reasons for discrediting such testimony). Remand orders, whether from this Court or from the Appeals Council, are meant to result in meaningful consideration. Their express directives are designed to ensure that such reconsideration actually happens, encouraging the ALJ to revisit a more fully developed record rather than provide post hoc rationalizations.

As in Beckman, the ALJ here failed to follow an express order on remand to obtain updated medical source statements. It also appears the ALJ failed to further develop the record in any way that affected his decision-making process. It has been more than two years since this Court's remand order and nearly two years since the Appeals Council's remand order. I conclude that, as in Beckman, the appropriate remedy in this case is to reverse the ALJ's determination and order the award of benefits

from October 31, 2001, through November 2006.

**CONCLUSION**

The Commissioner's decision is not based on substantial evidence in the record and is therefore reversed and remanded for payment of benefits.

IT IS SO ORDERED.

Dated this __/__ day of ~~August~~ *September* 2009.

_____
Ann Aiken
United States District Judge