IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT W. STRAUSS,                    Civil No 6:08-0931-AA
                                      OPINION AND ORDER
            Plaintiff,

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.
_____

Lisa R. Porter
KP Law LLC
16200 SW Pacific Hwy, Suite H-233
Portland, Oregon 97224
      Attorney for plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

Kathryn A. Miller
Special Assistant U.S. Attorney
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff, Robert Strauss, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g), 1383(c)(3), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title II disability insurance benefits (DIB) under the Act. In July 2007, this Court reversed the decision by the Administrative Law Judge (ALJ) and remanded for further proceedings. On remand, the Commissioner again denied plaintiff's applications for DIB. This Court reversed and remanded the second decision for payment of benefits in September 2009. The decision was subsequently appealed to the Ninth Circuit and remanded to this Court for further proceedings in March 2011. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On December 23, 2003, plaintiff protectively filed an application for DIB. Tr. 53-55. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an ALJ. Id. at 41. On January 11, 2006, ALJ Timothy Terrill conducted a hearing. Id. at 409-49. At the 2006 hearing, ALJ Terrill heard testimony from plaintiff,

PAGE 2 - OPINION AND ORDER

plaintiff's wife and children, and a vocational expert (VE). Id. On February 23, 2006, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Id. at 12-25. On September 29, 2006, the Appeals Council declined to review the ALJ's decision. Id. at 3-5. Plaintiff then filed a complaint in this Court.

On July 29, 2007, this Court reversed the ALJ's decision and remanded this case for further proceedings pursuant to a stipulation of the parties. Id. at 524-25. The remand order instructed the ALJ to conduct a new hearing, to further develop the record, and to issue a new decision. Id. On November 20, 2007, the Appeals Council remanded to the ALJ consistent with this Court's order. Id. at 526-29.

On April 24, 2008, the ALJ conducted a second hearing. Id. at 693-715. Plaintiff and a VE testified. On May 29, 2008, the ALJ issued a second decision finding plaintiff not disabled. Id. at 450-65. Plaintiff subsequently filed a complaint in this Court alleging, in part, that the ALJ failed to follow the remand order by improperly updating the medical record and neglecting to obtain medical source statements. Pl.'s Opening Br. at 22, April 13, 2009 (doc. 19). This Court agreed that the ALJ failed to follow the remand order and reversed and remanded for the payment of benefits. Opinion and Order at 13, 21, Sept. 2, 2009 (doc. 23). Accordingly, the Court declined to consider the remainder of plaintiff's allegations of error. Id. at 13-14.

Subsequently, the Commissioner appealed this Court's

PAGE 3 - OPINION AND ORDER

decision to the Ninth Circuit.  Notice of Appeal at 1-2, Feb. 9,
2010 (doc. 29).  On March 28, 2011, the Ninth Circuit held that
this Court exceeded its statutory authority by awarding benefits
based on the ALJ's failure to fully implement the remand order
without first determining that plaintiff was disabled within the
meaning of the Act.  Mandate at 4156-57 May 20, 2011 (doc. 30).
Therefore, the Ninth Circuit remanded plaintiff's case to this
Court for further proceedings.  Id.

### FACTUAL BACKGROUND

Born on January 26, 1957, plaintiff was 44 years old on the
alleged onset date of disability.  Tr. 88.  He graduated high
school and completed one year of college.  Id. at 86.  Plaintiff
has past relevant work experience in the computer services
industry as a recruiting manager, recruiter, sales
representative, sales manager, district sales manager, technical
training instructor, and president of a company.  Id. at 445.
Plaintiff also has past relevant work as a branch manager of an
employment agency.  Id.  He alleges disability beginning October
31, 2001 due to left knee chronic neuropathic pain, hypertension,
and depression.  Id. at 81.

### STANDARD OF REVIEW

The court must affirm the Secretary's decision if it is
based on proper legal standards and the findings are supported by
substantial evidence in the record.  Hammock v. Bowen, 879 F.2d
498, 501 (9th Cir. 1989).  Substantial evidence is "more than a
mere scintilla.  It means such relevant evidence as a reasonable

PAGE 4 - OPINION AND ORDER

mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol.
Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court
must weigh "both the evidence that supports and detracts from the
Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772
(9th Cir. 1986).

The initial burden of proof rests upon the claimant to
establish disability. Howard v. Heckler, 782 F.2d 1484, 1486
(9th Cir. 1986). To meet this burden, plaintiff must demonstrate
an "inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which can be expected . . . to last for a continuous
period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process
for determining whether a person is disabled. Bowen v. Yuckert,
482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First,
the Secretary determines whether a claimant is engaged in
"substantial gainful activity." If so, the claimant is not
disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b),
416.920(b).

In step two, the Secretary determines whether the claimant
has a "medically severe impairment or combination of
impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§
404.1520©, 416.920©. If not, the claimant is not disabled.

In step three, the Secretary determines whether the
impairment meets or equals "one of a number of listed impairments

PAGE 5 - OPINION AND ORDER

that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish whether the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

### I. The ALJ's Findings

At step one of the five-step sequential process, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date to November 2006. Tr. 455-56. Plaintiff, however, testified at the 2008 hearing that he had worked full-time off and on from November 2006 through January 2008 and admitted that he stopped working because his employer went out of business, not due to his disability. Id. at 456. Therefore, the ALJ only evaluated whether plaintiff was

PAGE 6 - OPINION AND ORDER

disabled between October 2001 and November 2006.[1]

At step two, the ALJ found that plaintiff had the following severe impairments: reflex-sympathetic dystrophy syndrome in the left leg and osteoporosis.  Id.

At step three, the ALJ found that plaintiff did not suffer from an impairment or combination of impairments that meet or medically equal one of the listed impairments in the regulations. Id. at 457.

Because plaintiff was not presumptively disabled at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work.  The ALJ determined that plaintiff had the residual functional capacity (RFC) "to perform a limited range of light work."  Id.  According to the ALJ's assessment, plaintiff is able to lift 20 pounds occasionally and ten pounds frequently; stand/walk for 15 minutes at a time for a total of two hours out of an eight hour workday; sit for 30 minutes at a time with no overall limitations; and occasionally climb, balance, stoop, kneel, crawl, and crouch.  Id. at 458.

At step four, the ALJ found that plaintiff was capable of performing past relevant work as a branch manager, computer sales, sales manager, chief executive officer, and recruiter. Id. at 464.

The ALJ also entered an alternative finding at step five;

---

[1]Pursuant to the appeal, plaintiff submits no new medical records post January 2008.  Therefore, there is no new evidence to determine plaintiff's disability after he was laid off in January 2008.

based on the VE's testimony, the ALJ found that plaintiff could
also perform other jobs that exist in significant numbers in the
national and regional economies, such as computer sales and
district or branch manager- computers.  Id.  Accordingly, the ALJ
determined that plaintiff was not disabled within the meaning of
the Act.

II.  Plaintiff's Allegations of Error

Plaintiff asserts that the ALJ erred by: (1) improperly
rejecting his testimony; (2) improperly rejecting lay witness
testimony; (3) finding plaintiff's colitis and depression were
not severe at step two; (4) failing to consider all of his
impairments in formulating the RFC; and (5) finding that
plaintiff was capable of performing his past relevant work or,
alternatively, other work in the national economy.

A.  Plaintiff's Testimony

Plaintiff alleges that the ALJ failed to provide clear and
convincing reasons for rejecting his testimony regarding the
extent of his impairments.  Pl.'s Opening Br. at 25, April 13,
2009 (doc. 19).  When a claimant has medically documented
impairments that could reasonably be expected to produce some
degree of the symptoms complained of, and the record contains no
affirmative evidence of malingering, "the ALJ may reject [his]
testimony regarding the severity of symptoms only if he makes
specific findings stating clear and convincing reasons for doing
so."  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir.
1996)(internal quotation omitted).  If the "ALJ's credibility

PAGE 8  -  OPINION AND ORDER

finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ determined that plaintiff's subjective allegations were not credible for a number of reasons. Tr. 458. Notably, the ALJ found that plaintiff's testimony regarding his physical and mental limitations "was inconsistent with the treatment record and his activities of daily living." Id. at 460. Daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration because they bear on the plaintiff's ability to tell the truth. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); see also Valentine v. Comm'r, 574 F.3d 685, 692 (9th Cir. 2009).

Plaintiff testified that he actively searched for employment during the relevant time period. Tr. 697-704. In searching for jobs, plaintiff's wife reported he would talk on the phone for interviews and spend all day on the computer applying for jobs. Id. at 98. Plaintiff's attempts at finding work were successful; he performed skilled work as a branch manager at Labor Ready, Inc. from April through June of 2003, working 60 hours per week. Id. At 74.

Plaintiff stated on his disability application that he

PAGE 9 - OPINION AND ORDER

stopped working because he "wasn't meeting the employer's expectations" in addition to marking two boxes on the form indicating he stopped working because of his medical condition and for other reasons. Id. A personnel report from Labor Ready, Inc. indicates plaintiff was terminated for "unsatisfactory performance." Id. at 122. Plaintiff also worked part-time in 2005 and 2006 as a trainer for various computer products. Id. at 697-8. By 2007, plaintiff was working full-time for Comp USA until they went out of business in 2008 and he was laid off. Id. at 699.

In addition to job related functions, the ALJ made note of various other activities of daily living that were inconsistent with plaintiff's subjective symptom testimony. For example, the ALJ noted that plaintiff helped a friend move in 2003 by lifting and moving boxes. Id. at 183. Plaintiff testified he is able to manage the responsibilities of raising two children. Tr. 707-8. Plaintiff has full custody of his two children (divorced in 2004); when asked by the ALJ if his children were independent in making their own meals, he said "no, I'm the cook." Id. at 707-08. Plaintiff also stated that other household chores, such as laundry and shopping, are "all... me." Id. at 708.

The ALJ found that this evidence directly contradicted plaintiff's contentions about how debilitating his pain and other limitations were and that he had been "more active than expected in an individual claiming total inability to work." Id. at 459. In addition to plaintiff's activities of daily living,

PAGE 10 - OPINION AND ORDER

plaintiff's treatment record reveals that his depression and physical pain were being adequately controlled through medication. Id. at 359, 374. Thus, the ALJ concluded that plaintiff was not fully credible. Id. at 459.

Substantial evidence supports the ALJ's finding. As detailed above, and as noted by the ALJ, ample evidence contradicts plaintiff's claims that his impairments were so great that he was unable to work, as he was, in fact, actually working for most of the relevant time period. Therefore, I find that the ALJ provided a clear and convincing reason to reject plaintiff's subjective testimony regarding the extent of his limitations, and as such, it is unnecessary for this Court to further discuss the other reasons provided.

B. Lay Witness Testimony

Plaintiff next asserts that the ALJ erroneously rejected the lay testimony of his wife, son, and daughter. The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416.945(a)(3); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. Dodrill, 12 F.3d at 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons germane to each witness for rejecting his or her testimony. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence is a germane reason.

Lewis, 236 F.3d at 512.

In the 2008 opinion, the ALJ noted lay witness testimony from plaintiff's wife, son, and daughter from 2006. Tr. 459. In addition, the ALJ considered a function report completed by plaintiff's wife in January 2004. Id. at 458.

The ALJ found that plaintiff's wife's "reports about [plaintiff] talking on the phone for interviews, watching TV, reading, taking care of the kids, etc., contradict any significant problems in the referred areas." Id. at 98-106, 458. The ALJ summarized the lay testimony by indicating it "reflects observations similar to those [already] discussed... [including] walking, standing, and mobility." Id. at 459. Plaintiff's wife testified that plaintiff walks very slowly and limps, he gets worn out easily, that he has trouble focusing, and that he is irritable and depressed. Id. at 511-12. Plaintiff's children testified that plaintiff walks slower and for shorter distances than he used to, that he is irritable, and that he gets worn out easily. Id. at 515-17. As such, the ALJ concluded that the "observations conflict with the claimant's activities of daily living." Id. at 459.

While plaintiff is correct that the testimony by the third-party witnesses was discredited for similar reasons, such a fact does not, in and of itself, establish reversible error. See Valentine, 574 F.3d at 694 (9th Cir. 2009) (holding that one germane reason is sufficient to discredit statements from lay witnesses). Accordingly, I find that the ALJ provided germane

PAGE 12 - OPINION AND ORDER

and specific reasons for rejecting the statements of each
third-party witness.

The ALJ expressly considered the lay witness testimony and
found that it conflicted with the plaintiff's activities of daily
living.  Based on these inconsistencies, the ALJ did not give
full weight to the third-party testimony.  See Lewis, 236 F.3d at
512 ("arguably contradictory statements" between family members'
testimony and the medical record are sufficient to discount
third-party statements).  Therefore, I find that the ALJ
presented germane and specific reasons to consider family
testimony with caution.

C. Step Two Findings

Plaintiff alleges the ALJ failed to consider the full record
in determining that plaintiff's colitis and depression were non-
severe.  At step two, the ALJ determines whether the claimant has
a medically severe impairment or combination of impairments; step
two findings must be based upon medical evidence.  20 C.F.R. §§
404.1520(a); 416.920(a).  An impairment is "not severe" if it
"does not significantly limit [the claimant's] ability to do
basic work activities."  20 C.F.R. §§ 404.1521(a); 416.921(a).
The step two inquiry is a "threshold inquiry." Yuckert, 482 U.S.
at 153.  As such, "[o]missions at step two are harmless if the
ALJ's subsequent evaluation considered the effect of the
impairment omitted at step two." Harrison v. Astrue, 2011 WL
2619504, *7 (D.Or. July 1, 2011) (citing Lewis v. Astrue, 498
F.3d 909, 911 (9th Cir. 2007)).

PAGE 13  -  OPINION AND ORDER

### 1.  Colitis

In the 2008 decision, the ALJ found that plaintiff's colitis
was non-severe because it "did not last for a continuous period
of 12 months."  Tr. 456.  The ALJ found that plaintiff's colitis
symptoms ceased in November 2005.  Id.

As a preliminary matter, the record is ambiguous regarding
whether plaintiff actually had colitis.  The medical reports show
that plaintiff's colonoscopy was normal and that there was "no
evidence of Chron's disease."  Tr. 646.  While Dr. Lezak noted
there was some "evidence of colitis...[as] his diarrhea has
persisted despite the Asacol and prednisone", the doctor also
noted that it was "unclear whether this is all related to colitis
[because] [i]t appears more of an infectious nature."  Id. at
638.  In addition, in April 2006, Dr. Lezak noted that he
"believe[d] that the diarrhea is related to bowel dysmotility and
irritable bowel syndrome."  Id. at 631.  Plaintiff was also
treated with numerous colitis medications that did not reduce his
diarrhea.  Id.

Regardless, contrary to the ALJ's assertion, the record
reveals that plaintiff was treated with medication for chronic
diarrhea from November 2005 through September 2006.  Tr. 620,
624, 627, 629, 631, 633, 635, 636, 638, 640, 642, 644, 646, 647,
689, 690.  The chronic diarrhea continued to some degree for a
year: in September 2006, the doctor noted that plaintiff's
colitis had improved, by October 2006 noted it was now
intermittent.  Id. At 616, 620.  In January 2007, plaintiff

reported that his diarrhea had "resolved completely" after "stopping all dairy". Id. at 612. Thus, the updated medical reports reveal that plaintiff's impairment lasted for more than 12 months.

Despite the ALJ's failure to consider the new reports in determining severity, an impairment is not severe as it does not limit the ability to do basic work activities. 20 C.F.R. §§ 404.1520(a); 416.920(a). Further, impairments that are successfully treated are not disabling. Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006).

Accordingly, the ALJ's failure to discuss medical reports regarding diarrhea after November 2005 is harmless error because plaintiff's impairment is inconsequential to the non-disability determination. The medical reports after November 2005 do not suggest any severe impairments related to diarrhea, rather plaintiff's diarrhea improved with the use of Tums and change in diet, such that it no longer imposed any limitation. Tr. 612, 620. While plaintiff may have been uncomfortable in living with his chronic diarrhea, the record does not show that plaintiff's ability to work was limited by this ailment, as he was working in 2005 and 2006 in computer sales and training and reported being on his feet most of the day. Id. at 616, 620. Therefore, substantial evidence supports the ALJ's finding that plaintiff's diarrhea imposed no more than a slight abnormality that was stabilized through diet and is therefore, not severe.

PAGE 15 - OPINION AND ORDER

2.  Depression

Plaintiff also alleges the ALJ erred in determining that his depression was non-severe.  The "effect of th[e] harmless error doctrine is tempered by additional requirements" when a claimant asserts disability due to mental impairments.  Harrison, 2011 WL 2619504 at *7(citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)).  In that case, the ALJ is required to "'document application of the [Psychiatric Review Technique] in the decision.'"  Keyser v. Comm'r, 648 F.3d 721, 725 (9th Cir. 2011) (quoting  20 C.F.R. § 404.1520a(e)); see also Dykstra v. Barnhart, 94 Fed.Appx. 449, 450 (9th Cir. 2004).

This technique is reflected in a Psychiatric Review Technique Form ("PRTF"), wherein the reviewer must: 1) "determine whether an applicant has a medically determinable mental impairment"; 2) "rate the degree of functional limitation for four functional areas"; and 3) "determine the severity of the mental impairment (in part based on the degree of functional limitation)."  Keyser, 648 F.3d at 725 (citing 20 C.F.R. § 404.1520a).  Accordingly, the ALJ's written opinion must "incorporate the pertinent findings and conclusions based on the technique" and "include a specific finding as to the degree of limitation in each of the functional areas."  Keyser, 648 F.3d at 725 (citations and internal quotations omitted).

Failure to document the application of the technique in the opinion "requires reversal if the plaintiff had a 'colorable claim of a mental impairment.'"  Dykstra, 94 Fed.Appx. at 450

PAGE 16  -  OPINION AND ORDER

(citing Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000) (construing an earlier version of section 1520a)); see also Keyser, 648 F.3d at 726. A colorable claim "is one which is not 'wholly insubstantial, immaterial, or frivolous.'" Dykstra, 94 Fed.Appx. at 450 (quoting McBride Cotton & Cattle Corp. v. Veneman, 290 F.3d 973, 981 (9th Cir. 2002)); see also Keyser, 648 F.3d at 726-27.

The ALJ found that plaintiff's "depression has been under adequate control with treatment and/or has not imposed severely limiting psychological symptoms." Tr. 456. This conclusion was based on the findings by non-examining psychologist, Dr. Rethinger, consulted by Disability Determination Services (DDS) in 2004, as well as progress notes from Dr. Coodley, plaintiff's treating physician, through 2004, and a questionnaire completed by Dr. Coodley in 2004. Tr. 456. Dr. Rethinger concluded that plaintiff suffered from an affective order with depression and anxiety, assessing "mild" limitations in social functioning, concentration, persistence, and pace. Id. at 319, 321, 326. There is no reference by the ALJ to medical reports regarding depression after 2004. Id. at 456.

Plaintiff contends that the ALJ erred by rejecting Dr. Coodley's assessment of plaintiff's depression in a questionnaire. The regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists over nonspecialists. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001), 20 C.F.R. §

PAGE 17  -  OPINION AND ORDER

404.1527(d)(3) and (d)(5).  The ALJ may rely on the medical
opinion of a non-treating doctor instead of the contrary opinion
of a treating doctor only if the ALJ provides "specific and
legitimate" reasons supported by substantial evidence in the
record.  Holohan, 246 F.3d at 1202.  If a treating physician's
opinion is not given controlling weight because it is
inconsistent with other substantial evidence in the record, the
ALJ is to consider specified factors in determining the weight it
will be given.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).
The mere fact that a medical report is provided at the request of
counsel is not a legitimate basis for evaluating the reliability
of the report.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.
1998).  Lack of consistency with other records, reports, or
findings could, however, form a legitimate basis for evaluating
the reliability of the report.  Id.

     In March 2004, Dr. Coodley was asked to complete a
questionnaire created by plaintiff's attorney.  Tr. 212.  Dr.
Coodley identified depression, anxiety, and opioid medication
dependency as psychological conditions affecting plaintiff.  Id.
at 214.  In this questionnaire, Dr. Coodley noted limitations
affecting plaintiff's ability to work at a regular job on a
sustained basis included "personal stress/family issues that
impact ability to handle additional stress of working environment
and expectations."  Id. at 219.  Dr. Coodley concluded it was
uncertain to what degree plaintiff could tolerate work stress
because "it is difficult to evaluate the amount of emotional

PAGE 18  -  OPINION AND ORDER

stress patient can tolerate due to multiple stressors: personal stress, physical pain, family problems, dependence on pain medication and the side effects of medication which compounds stress and limits coping ability." Id. at 215.

The ALJ made note of various progress reports created by Dr. Coodley regarding plaintiff's mental condition, which contradicted the answers provided in the 2004 questionnaire and, as such, found the reports to be "inconsistent." Id. at 457. The ALJ explained that Dr. Coodley "is not a psychologist or psychiatrist, and these are ultimately the medically acceptable sources within the meaning of the Social Security Regulations (SSR) authorized to offer assessments about mental health diagnoses and prognosis." Id. Accordingly, the ALJ ultimately concluded that the findings in the questionnaire were outweighed by the progress notes of Dr. Coodley combined with the findings of the non-examining DDS psychologist, Dr. Rethinger. Id.

The additional reports submitted for the 2008 hearing indicated that plaintiff's depression was under adequate control with treatment. Tr. 344, 351, 359, 372, 375, 599, 605, 607, 612, 615, 623, 633, 634, 636, 641, 642.[2] In addition, plaintiff

---

[2] The Court notes that while plaintiff cites pages in the Transcript that reflect plaintiff suffered from stress, anxiety, and depression (Pl.'s Opening Br. 22), these references incorrectly interpret the reports. The instructions on the form sheet to the examining doctor read: "check box if all elements are negative, or circle positives & slash\underline negatives." This instruction when read, changes most of the references of depression to be negatives as these words are underlined. While I do acknowledge some positive findings of stress and anxiety, these findings do not indicate plaintiff's depression was not being adequately controlled by medication.

denied increased symptoms of depression. Id. at 642. Only two progress reports from Dr. Coodley offer any sign that plaintiff was depressed: in a report from January 17, 2006, at which time plaintiff said that he "is a little down"; and in a report from April 11, 2006, where plaintiff reported that "he is quite depressed". Id. at 631, 644.

Plaintiff reported to Dr. Coodley that he was "quite depressed," however, he also reported that he "lost his relatively high-paying job and ha[d] recently been divorced." Id. at 631. However in the month prior to this complaint, plaintiff denied depression, and the month following the complaint, he indicated that he was not suffering from depression at that time. Id. at 628, 631, 633.

Thus, the most recent progress notes from Dr. Coodley support the ALJ's finding that plaintiff's depression was not significantly impairing his basic work functions because it was successfully being treated. Therefore, substantial evidence supports the ALJ's conclusion that plaintiff's depression was not a severe impairment.

D. Plaintiff's RFC Determination

Plaintiff contends that the ALJ erred by failing to incorporate limitations for all of his impairments in the RFC. In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p, available at 1996 WL 374184 page 5. Further, the ALJ is required to consider all medical opinions and assess

PAGE 20 - OPINION AND ORDER

the weight to be afforded each opinion.  20 C.F.R §§ 404.1527,
416.927.  However, the RFC need only incorporate limitations
found on the record.  Osenbrock v. Apfel, 240 F.3d 1157, 1164-5
(9th Cir. 2001) (restrictions not supported by substantial
evidence may be freely accepted or rejected by ALJ).

     In determining plaintiff's RFC, the ALJ considered
plaintiff's subjective allegations, employment records, lay
testimony from plaintiff's family, medical reports from
plaintiff's treating and examining physicians, and reports from
consultive DDS physicians.  Tr. 458-463.

     Based on this evidence, the ALJ found no evidence of
deterioration of plaintiff's condition as a result of his reflex
sympathetic dystrophy, as it has remained stable with treatment.
Id. at 463.  The ALJ also found the record as a whole shows that
plaintiff's psychological condition was stabilized through
treatment and monitoring.  Id.  As such, the ALJ concluded that
while plaintiff had limitations sustained by the medical
evidence, these would not preclude all employment.  Id.

     For example, the medical evidence in the record shows that
plaintiff was being treated and controlling his pain and
depression with medication and that he was doing well.  Id. at
353, 359, 371, 374, 378.  Plaintiff was treated for colitis but
did not respond to medication and improved his accompanying
diarrhea with a change in diet.  Id. at 612, 644, 646.
Therefore, the RFC determination is based on substantial evidence
regarding these impairments.

In addition to successful treatment through medication, the medical records do not affirmatively show evidence of debilitating side effects from medication or dependancy. While there is passing mention of side effects from plaintiff's pain medication, there is no evidence of side effects severe enough to interfere with plaintiff's ability to work. Tr. 180, 359. In fact, the progress notes consistently refer to the fact that plaintiff is tolerating his medications well. Id. at 155, 159, 173, 183. The ALJ found no evidence in the medical progress reports that plaintiff had an opioid dependancy to support Dr. Coodley's assertion in the questionnaire completed in 2004. Id. at 214, 463. The ALJ was not required to accept as true a listing by the treating doctor of possible side effects associated with plaintiff's medication in a questionnaire. I note that plaintiff chose medication over surgery in treating his pain. The medical records show that it was recommended that plaintiff undergo surgery to alleviate his pain and to get off of opiate medications and that he refused. Id. at 185, 189, 356, 635. Further, plaintiff was counseled numerous times on diet and exercise to improve his condition and never followed through. Id. Therefore, I find that plaintiff's allegations that the ALJ erred because the RFC failed to reflect impairments due to medication side-effects must fail.

Second, plaintiff argues that the RFC is legally deficient because the ALJ failed to assess the impact of obesity, colitis, and headaches that affect his cognitive ability on plaintiff's

PAGE 22 - OPINION AND ORDER

ability to perform sustained work activity. At step two, the ALJ
concluded that the plaintiff's obesity, cognitive ability, and
colitis were non-severe impairments. The findings regarding
obesity and cognitive ability at step two are not in dispute.
Despite these impairments, plaintiff was able to work at relevant
jobs including skilled work as a branch manager at Labor Ready,
in 2003, working 60 hours per week. Id. At 74. He also resumed
full time employment in November 2006 until the company went out
of business in 2008. Id. at 699. The ALJ concluded that these
conditions did not significantly limit plaintiff because he was
working with them and stopped only because his employer went out
of business so he did not further consider any limitations in the
RFC assessment.

Plaintiff does not detail what other physical limitations
follow from his obesity or headaches, besides the limitations
already listed in the RFC. To the extent obesity or headaches
were limiting, it is accounted for in the RFC finding by the ALJ
that plaintiff is capable of performing a limited range of light
work. It is not apparent to this Court what further limitations
extend from these impairments so the RFC is appropriate.

Therefore, plaintiff's RFC, which requires that he lift no
more than 20 pounds at a time with frequent lifting or carrying
of no more than 10 pounds; stand/walk for a maximum of 15 minutes
at a time for a total of two hours in an eight-hour workday; sit
for 30 minutes at a time with no overall limitations; be
restricted to occasionally climb, balance, stoop, kneel, crawl,

PAGE 23  -  OPINION AND ORDER

and crouch; and avoid hazards adequately accommodates plaintiff's
impairments. As such, the ALJ's RFC assessment must be upheld.

E.   Plaintiff's Ability to Perform Past Relevant Work and
     Other Jobs

Lastly, plaintiff contends that the ALJ erred in finding
that he was able to perform past relevant work, or alternatively,
other work in the national economy. For purposes of step four,
plaintiff bears the burden of showing that he does not have the
residual functional capacity to engage in "past relevant work."
20 C.F.R. §§ 404.1520(e) & 416.920(e); Tackett v. Apfel, 180 F.3d
1094, 1098 (9th Cir. 1999). If plaintiff can perform past
relevant work, then he is not disabled. 20 C.F.R. § 404.1520(f).
If not, then the ALJ moves to step five to determine if
plaintiff's RFC allows other substantial gainful work. Id. at
(g)(1). At step four, the ALJ has a duty to review plaintiff's
RFC "and the physical and mental demands of the work [he has]
done in the past." Id. at (e). Social Security Ruling 82-62
addresses the ALJ's role more specifically, requiring findings
regarding 1) the individual's residual functional capacity, 2)
the physical and mental demands of prior jobs or occupations, and
3) the ability of the individual to return to the past occupation
given his or her residual functional capacity. SSR 82-62,
Soc.Sec.Rep. 809, 812 (West 1983).

First, as set forth in section D above, the ALJ's RFC
assessment is based on substantial evidence. Second, plaintiff
alleges that the ALJ failed to make an inquiry regarding the

PAGE 24  -  OPINION AND ORDER

mental and physical demands of plaintiff's prior work.  Contrary
to plaintiff's assertions, the ALJ questioned plaintiff at the
2008 hearing regarding the demands of his prior jobs.  Tr. 697-
704.  Regarding the mental demands of his recent employment,
plaintiff testified that he was required to memorize scripts and
prepare for training programs.  Id. at 700 and 702.  Regarding
the physical demands, plaintiff testified that these occupations
required him to travel out of the office, carry boxes, and be out
on the sales floor.  Id.  These inquiries were accompanied by
plaintiff's subjective complaints regarding his difficulties in
meeting these demands.  Id.  Because the ALJ made inquiries into
the physical and mental demands of plaintiff's prior work, the
required finding of mental and physical demands is satisfied in
determining plaintiff's ability to return to previous work.

    Third, plaintiff alleges that the jobs identified by the VE
were light jobs exceeding plaintiff's ability to stand as defined
by the SSR.  An ALJ may rely on VE testimony that contradicts the
Dictionary of Occupational Titles so long as the record contains
persuasive evidence to support the deviation.  Johnson v.
Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

    The ALJ found that plaintiff's RFC allowed him to perform a
"limited range of light work."  Tr. 457.  Within that limited
range, the ALJ found that plaintiff is able to walk for 15
minutes at a time for a total of two hours in an eight-hour work
day.  Id.  Based on these constraints, the ALJ posed
hypotheticals to vocational experts at both hearings.  Each VE

PAGE 25  -  OPINION AND ORDER

found that plaintiff could perform past relevant work as a branch
manager, sales manager, CEO, recruiter, and sales manager.[3]  Id.
at 464.  The ALJ relied on this expert testimony in determining
plaintiff is capable of performing past relevant work.

In addition, the record contains persuasive evidence to
support the ALJ's finding.  Plaintiff had, in fact, performed
past relevant work, to some degree, throughout the alleged time
of disability.  Id. at 455-56.  Plaintiff was found to have
performed substantial gainful activity doing this past relevant
work under the same physical and mental limitations.  Id.
Therefore, the ALJ finding that plaintiff could perform past
relevant work based on an RFC of a limited range of light work is
supported by the evidence.

In the alternative, the ALJ found that plaintiff was capable
of performing other work existing in the national economy.  Id.

_____

[3] The ALJ noted that Mr. Stipe, the VE at the 2006 hearing
found that plaintiff is able to perform past work in computer
sales.  Tr. 464.  I note that in the transcript of the hearing,
the exact finding was "computer sales manager".  Id. at 519.
This discrepancy is harmless because the ALJ found that plaintiff
was capable of performing past relevant work as a branch manager,
sales manager, CEO, and recruiter, or, in the alternative, other
relevant work.  Id. at 464.  The burden of establishing "that an
error is harmful falls on the party attacking an administrative
agency's decision."  Shinseki v. Sanders, 129 S.Ct. 1696, 1706
(2009) (citations omitted).  Recently, the Ninth Circuit held
that Sanders applies to Social Security cases, explaining,
"[w]here harmfulness of the error is not apparent from the
circumstances, the party seeking reversal must explain how the
error caused harm."  McLeod v. Astrue, 640 F.3d 881, 887 (9th
Cir. 2011) (as amended).  Here, plaintiff did not address how the
ALJ's error in finding one of the jobs for a summary of past
relevant work was harmful and it is not apparent to this Court.
Without more, plaintiff cannot establish that this case should be
remanded for further proceedings.

PAGE 26  -  OPINION AND ORDER

at 464.  At this step, the burden of proof shifts to the
Commissioner to demonstrate that plaintiff can perform other
types of substantial gainful activity that exists in "significant
numbers" in the national economy.  Yuckert, 482 U.S. at 141-42.
This requires the ALJ to consider the claimant's RFC, age,
education, and work experience.  20 C.F.R. § 404.1520(f),
416.920(f).  The ALJ uses a VE by providing a hypothetical
question that is based on medical assumptions supported by
substantial evidence in the record, that reflects all of the
claimant's limitations.  Osenbrock, 240 F.3d at 1163.

Plaintiff argues the ALJ failed to meet his step five burden
by not identifying transferrable skills.  In support of his
contention, plaintiff asserts that the ALJ and the VE failed to
identify such skills and was required to do so by SSR 82-41.
Pl.'s Opening Br. at 32, April 13, 2009 (doc. 19).

The VE testified that plaintiff's experience qualified him
to work in a sedentary, managerial type of job in the computer
industry.  Tr. 711.  The VE stated that this type of work "would
allow a person with these kind of restrictions to perform because
they fall into the sedentary."  Id.  When asked if there were
skills from plaintiff's past relevant work that were
transferable, the VE testified that plaintiff's skills would be
transferrable across the computer industry in sedentary jobs
including managerial positions in computers, computer parts, and
computer products.  Id. at 712.  Transferability of skills is
defined in Social Security Ruling ("S.S.R.") 82-41 as "applying

PAGE 27  -  OPINION AND ORDER

work skills which a person has demonstrated in vocationally
relevant past jobs to meet the requirements of other skilled or
semiskilled jobs." S.S.R. 82-41 § 2(b). S.S.R. 82-41 further
states that:

> transferability ... is most probable and meaningful among
> jobs in which: (1) the same or a lesser degree of skill is
> required ... (i.e., from a skilled to a semiskilled or
> another skilled job, or from one semiskilled to another
> semiskilled job); (2) the same or similar tools and machines
> are used; and (3) the same or similar raw materials,
> products, processes or services are involved. A complete
> similarity of all these factors is not necessary.

S.S.R. 82-41 § 4(a).

Here, the VE testified that plaintiff's skills transferred
to "just about any kind of managerial positions" within the
computer industry. Tr. 712. Substantial evidence supported the
ALJ's finding that plaintiff's prior work experience qualified
him to perform other relevant work as a manager in the computer
industry. As discussed above, this Court finds that the ALJ did
not improperly assess such evidence.

Regardless, because the ALJ did not err at steps one through
four, the step five findings are not at issue. 20 C.F.R. §
404.1520(a)(4).

Therefore, I find that the record as a whole provides
substantial evidence that supports the finding that plaintiff is
not disabled.

## CONCLUSION

The Commissioner's decision is based on substantial evidence and the proper legal standard, and is therefore affirmed. This case is dismissed.

IT IS SO ORDERED.
Dated this $\cancel{23}^{\cancel{rd}}$ day of March 2012.

_____
Ann Aiken
United States District Judge

PAGE 29 - OPINION AND ORDER